UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

GANIYU A. JAIYEOLA,

                            Plaintiff,

      -against-                                          5:00-CV-01578
                                                          (LEK/GJD)
CARRIER CORPORATION,

                            Defendant.

_____

## MEMORANDUM-DECISION and ORDER[1]

Currently before the Court is a Motion for summary judgment filed by Defendant,

Carrier Corporation ("Defendant") on February 14, 2008.  Motion (Dkt. No. 73); Response (Dkt.

No. 90); Reply (Dkt. No. 91).

I.      **Background**

This is an employment discrimination case.  Plaintiff Ganiyu A. Jaiyeola ("Plaintiff") is a

black male originally from Nigeria, who claims he was terminated from his job with Defendant

based on his race/color and national origin in violation of Title VII of the Civil Rights Act of

1964 ("Title VII") as amended (current version at 42 U.S.C. §2000e et seq.).

In May 1995, while a Ph.D. student at the University of Connecticut, Plaintiff applied for

a "Corrosion Engineer" position within the Materials and Technical Services ("MTS")

Department of Defendant.  Soon thereafter, Plaintiff had an informal interview with Dr. Sandra

Downey ("Dr. Downey"), who was Defendant's Program Manager in charge of MTS .  As a

result of this preliminary interview, Dr. Downey invited Plaintiff to participate in a formal

_____

[1] For printed publication by the Federal Reporters.

1

interview which took place on May 26, 1995 at Defendant's Syracuse facility.

Plaintiff accepted the invitation and interviewed again with Dr. Downey.  Ultimately, Dr. Downey decided to hire Plaintiff from among several candidates, and on June 26, 1995, Defendant issued Plaintiff a letter offering him the position of "Senior Scientist" within the MTS Department.  Plaintiff accepted Defendant's offer of employment, and his start date was set for September 19, 1995.  His starting salary was set at $55,000 per year.  As a Senior Scientist within MTS, Plaintiff reported directly to Dr. Downey, and she assigned and supervised his work.

Dr. Downey first formally evaluated Plaintiff's work in September 1996 for the previous year (the period between September 1995 and September 1996).  She noted that Plaintiff was "hard working" and "conscientious" but also noted areas of Plaintiff's work, such as "failure analysis techniques" and "communication," in which there was room for improvement.  Overall, Dr. Downey rated Plaintiff a "3," indicating that he "[met] all requirements and objectives in a consistent and competent manner."  In the "employee comments" section of the September 1996 evaluation, Plaintiff wrote that he had "the best supervision to date in terms of guidance and task assignments."  Plaintiff received a salary increase following this performance evaluation.

Dr. Downey completed Plaintiff's second formal evaluation in September 1997, for the time period between September 1996 and September 1997.  Again, Dr. Downey complimented aspects of Plaintiff's performance, and suggested room for improvement in other areas.  Dr. Downey assigned Plaintiff ratings ranging from "T" ("on target" performance) to "B" (performance was "below target").  Dr. Downey rated Plaintiff's overall performance as that of a "DE" or developing employee, which meant that his performances was "developing to reach a level that would be expected from a fully competent employee."  Plaintiff indicated on the

evaluation sheet that he understood how his performance had been evaluated, and that he did not wish to appeal the evaluation.

Plaintiff's third formal evaluation was completed by Dr. Downey in September 1998. In this evaluation, Dr. Downey criticized Plaintiff for problems with a particular project, known as the SRV2 program. The problems with SRV2 resulted in multiple tests needing to be redone due to inaccurate chemistry, causing the project to run over budget. Dr. Downey stated that Plaintiff had been asked to review the chemistry of all tests with management prior to setting up tests in the future, and that "[t]his should not be required of a Senior Scientist." However, Dr. Downey also complimented aspects of Plaintiff's work, noting that he was a "hard worker" who put in "a great deal of his personal time to complete tasks on time." Again, Plaintiff's scores ranged from T (on target) to B (below target), and he was given an overall rating of DE (developing employee).

After discussing the September 1998 evaluation with Dr. Downey, Plaintiff indicated that he was not pleased with the ratings, and took steps to initiate the appeal process. First, he met with Mr. Mark Hoekstra ("Mr. Hoekstra"), Defendant's Human Resource Manager at the time, who told Plaintiff that the appeal needed to be in writing. Per Mr. Hoekstra's request, Plaintiff, on September 18, 1998, submitted a seven page letter of appeal, in which he contested Dr. Downey's evaluation. Specifically, Plaintiff disagreed with Dr. Downey's assessment of Plaintiff's performance in the SRV2 program. Plaintiff acknowledged that about 50 tests had to be redone, but disputed whether the mistakes surrounding the program were his fault. Plaintiff contended that, for the SRV2 program, it was decided not to use the "blend inhibited bromide as per [Defendant's] specification" and that, if Dr. Downey wanted Plaintiff to use that compound,

3

she should have informed him prior to his performing the 50 tests.  Exh. M at 5 (Dkt. No. 90).

On November 6, 1998, Plaintiff e-mailed Mr. Hoekstra requesting a progress report on the appeal, but Mr. Hoekstra did not respond.  In no correspondence with Mr. Hoekstra did Plaintiff contend that Dr. Downey's assessment of him was in any way based on his race/color or national origin.

In late 1998, as the first of several layoffs which ultimately resulted in the elimination of the entire MTS Department, including Dr. Downey, Carrier management determined that the size of MTS should be reduced.  Dr. Downey was directed to identify personnel for layoff.  At the time, Plaintiff was the poorest performer in the group, and Dr. Downey determined that he should be laid off.

On December 18, 1998, Plaintiff received a letter from Dr. Downey, signed by Mr. Hoekstra, stating that, in connection with a reduction in the workforce, his employment with Defendant would be terminated on January 29, 1999.  The letter stated that Plaintiff had the option to spend the remaining paid time either working or looking for other work. The letter also listed "separation benefits" available to Plaintiff if he agreed to the terms and condition of Defendant's Severance Agreement.  Plaintiff refused the severance offer.

On April 1, 1999, Plaintiff filed charges with the New York State Division of Human Rights ("NYSDHR") alleging that he was laid off due to his race/color (black) and national origin (Nigerian) in violation of the New York State Human Rights Law.  On August 8, 2000, after a thorough investigation which, *inter alia*, included an interview of Dr. Downey, NYSDHR dismissed Plaintiff's claim.

On August 7, 2000, Plaintiff filed a complaint with the Equal Employment Opportunity

Commission ("EEOC").  The EEOC adopted the findings of the state fair employment practices

agency, dismissed the complaint, and issued notice of a right to sue on October 10, 2000.  On

October 16, 2000, Plaintiff, proceeding *pro se*, filed this Title VII lawsuit alleging that his layoff

was discriminatory due to his race/color and national origin.  Dkt. No. 1.

## II.    Standard of Review

Summary judgment should be granted if, when viewing the evidence in the light most

favorable to the nonmoving party, the court determines that there is no genuine issue as to any

material fact and the moving party is entitled to judgement as a matter of law.  FED. R. CIV. P.

56(c).  For summary judgment purposes, a dispute about a genuine issue exists where the

evidence is such that a reasonable jury could decide in the non-movant's favor. FED. R. CIV. P.

56(c); see also Beyer v. County of Nassau, 524 F.3d 160,163 (2d Cir.  2008).  Rule 56(c)

mandates the entry of summary judgment against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986);  Byrne

v. CNA Ins., Co., 2001 U.S. Dist. LEXIS 12975 (N.D.N.Y. 2001).

## III.   Discussion

In order to survive a motion for summary judgment, a Title VII plaintiff must satisfy a

three-part burden shifting test.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973);

See also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000); Dawson v.

Bumble & Bumble, 398 F.3d 211, 216 (2d Cir.  2005).  First, a plaintiff must establish a prima

facie case of discrimination by showing that (1) he is member of a protected class; (2) he

performed his duties satisfactorily; (3) he suffered an adverse employment decision or action; and

(4) the decision or action occurred under circumstances giving rise to an inference of discrimination.  Dawson, 398 F.3d at 216; Farias v. Instructional Sys., Inc., 259 F.3d 91, 98 (2d Cir. 2001).

If the plaintiff succeeds in establishing a prima facie case, a presumption of discrimination arises and the burden shifts to the defendant (employer) to proffer some legitimate, nondiscriminatory reason for the adverse decision or action.  Farias, 259 F.3d at 98.  If the defendant proffers such a reason, the presumption of discrimination created by the prima facie case drops out of the analysis, and the defendant will be entitled to summary judgment unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination.  Dawson, 398 F.3d at 216.  At that stage, the plaintiff must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were merely a pretext for discrimination.  Reeves, 530 U.S. at 143.

a.      The Plaintiff's Prima Facie Case

To establish the first prong of a prima facie case under Title VII, Plaintiff must first prove that he is a member of a protected class.  Farias, 259 F.3d at 98.  Under 42 U.S.C. § 2000e-2, it is unlawful for an employer to discharge an employee "because of such individual's race, color, religion, sex, or national origin."  Civil Rights Act, 42 U.S.C. § 2000e et seq (1964).  Because plaintiff is black and Nigerian, he is a member of a protected class, and thus satisfies the first step in establishing a prima facie case.

Plaintiff is also able to establish the third prong of a prima facie case under Title VII.  In order to surpass this step, Plaintiff must illustrate that he suffered an adverse employment action.

Farias, 259 F.3d at 98.  Since Plaintiff's employment with Defendant was terminated on January 29, 1999, he suffered such an action, and the third prong is met.

In order to satisfy the second prong, Plaintiff must illustrate that he was performing his duties satisfactorily at the time of his layoff.  Farias, 259 F3.d at 98.  Plaintiff's job performance evaluations from 1996, 1997, and 1998 illustrate that he had both strengths ("hard working") and weaknesses (room for improvement in "failure analysis techniques").  In 1997 and 1998, Plaintiff was rated overall as a "developing employee," which indicated that he was moving towards being "fully competent."  In Plaintiff's 1998 evaluation, Dr. Downey stated that Plaintiff needed to clear all chemistry for future test with management and that "[t]his should not be required of a Senior Scientist."  However, after the 1998 evaluation Plaintiff received a salary increase, which may be indicative of satisfactory performance.  Plaintiff's 1998 performance evaluation is the most contested point of dispute between the parties.  See, e.g., Response at 6 ("I was not happy with this evaluation"), 7 ("I do no agree with [Dr. Downey] on this evaluation"), 8 ("[Dr. Downey] evaluated my performance unfairly") (Dkt. No. 90).

For purposes of this Court's decision, however, it is immaterial whether Plaintiff can establish satisfactory job performance, since he is unable to show that the circumstances surrounding his termination give rise to an inference of discrimination, and is therefore unable to satisfy the fourth prong of a prima facie case.

The Second Circuit has observed that "[a]lthough each case must involve an examination of all the circumstances. . .when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation."  Grady v. Affiliated Central, Inc.  130 F.3d 553, 560 (2d Cir. 1997).  Plaintiff was hired by Dr. Downey as

7

a Senior Scientist in the MTS Department in 1995.  In 1998, it was Dr. Downey, under a directive from management to reduce to her staff, who decided that Plaintiff, as MTS's worst rated performer, should be laid off.  Where, as here, Dr. Downey was aware of Plaintiff's race/color and national origin when she hired him from amongst several candidates, and where, as here, Dr. Downey was under a directive to reduce her staff among which Plaintiff had the poorest performance, an inference of discrimination is not appropriate.

Additionally, between the years 1998 and 2001, Defendant reduced its Syracuse workforce by nearly 1100 employees, 600 of whom were salaried.  The reduction in force initiative was driven by a combination of business conditions and market forces.  Defendant made strategic decisions regarding manufacturing operations locations and methodology, and in 2001 eliminated the entire MTS Department, including Dr. Downey.

Considering that Dr. Downey had both hired and terminated Plaintiff, that Plaintiff had the poorest performance ratings in MTS, and that Defendant had undertaken continuing workforce reductions (which eventually led to the elimination of the entire MTS Department), this Court finds that the circumstances surrounding Plaintiff's termination do not give rise to an inference of discrimination.

Since the record does not show and Plaintiff does not point to facts sufficient to establish the existence of an element essential to his case, and on which he bears the burden of proof, Defendant's Motion for summary judgment must be granted.

### b.    Defendant's Proffered Legitimate Non-Discriminatory Reason

Since Plaintiff does not allege facts that give rise to an inference of discrimination, he is unable to establish a prima facie case and summary judgment is granted on those grounds.

8

However, even if, *arguendo*, the facts surrounding Plaintiff's termination were construed as establishing prima facie discrimination, the burden would shift to Defendant to proffer some legitimate, non-discriminatory reason for terminating Plaintiff.  Farias 259 F.3d at 98.  The Court finds that Defendant would satisfy this burden.

In the late 1990's, Defendant began decreasing its presence in Syracuse through a series of many relatively small and a few large reduction in force initiatives.  Between 1998 and 2001, Defendant reduced its salaried workforce by about 600 employees and its hourly workforce by more than 500 employees.  During one such reduction in force initiative, Dr. Downey was instructed to reduce the number of personnel reporting to her as part of a group layoff.  At the time, Plaintiff was identified as the weakest performer in the MTS Department, and was selected for layoff.  By December 2001, the entire MTS Department, including Dr. Downey, was eliminated from Defendant's Syracuse campus.  Plaintiff, having the weakest performance evaluations in the MTS Department, was in the unfortunate position of being the first to go.  However, Defendant's decisions were driven by a combination of business conditions, market forces, and strategic decisions concerning Defendant's manufacturing operations location and methodology, not Plaintiff's race/color and national origin.

Since Defendant could fulfill its burden by proffering this legitimate non-discriminatory reason for Plaintiff's termination, Plaintiff would then be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reason offered by Defendant was not its true reason, but rather a pretext for discrimination.  Reeves, 530 U.S. at 143.  Plaintiff has not presented and the Court does not find evidence in the record sufficient to fulfill this burden.

The only evidence present in the record which may possibly be construed as showing

9

pretext is Plaintiff's disagreement with Dr. Downey regarding his September 1998 performance evaluation, and Mr. Hoekstra's delay in processing Plaintiff's appeal.  However, Plaintiff's subjective belief that he was a better performer than his supervisor believed him to be is insufficient to prove pretext.  See McClee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir.  1997) (finding that the plaintiff's rationalizations for his deficiencies did not create any genuine issue of material fact regarding the employer's legitimate explanation that plaintiff had unsatisfactory job performance); Stanojev v. Ebasco Servs., Inc., 643 F.2d 914, 921-22 (2d Cir.1981) (reasoning that an employee may be discharged "on the basis of subjective business judgments, for any reason that is not discriminatory"); Ricks v. Conde Nast Publications, Inc., 92 F.Supp.2d 338, 346 (S.D.N.Y. 2000) ("The mere fact that an employee disagrees with her employer's assessment of her work, however, cannot, standing on its own, show that the employer's asserted reason for termination was pretextual").

Furthermore, Defendant's removal of the entire MTS Department from its Syracuse campus in 2001 illustrates that its choices were not driven by discrimination, but rather by market forces and strategic business planning.

Therefore, even if  Plaintiff could establish a prima facie case, he would be unable to fulfill his final burden by overcoming Defendant's legitimate, non-discriminatory reason for his termination, an essential element of his case upon which he would bear the burden of proof. Accordingly, summary judgment for Defendant would be proper on these alternative grounds.

### c.    Plaintiff's Rule 56(f) Request

In Plaintiff's Response papers, he asks the Court to "grant [him] the opportunity to depose Dr. Sandra Downey and Mr. Mark Hoekstra." Response at 9 (Dkt. No. 90).  Rule 56(f)

provides that if "a party opposing the motion shows by affidavit that, for specified reasons, it

cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2)

order a continuance to enable affidavits to be obtained, depositions to be taken, or other

discovery to be undertaken; or (3) issue any other just order." FED. R. CIV. P. 56(f).

In Burlington Coat Factory Warehouse Corp. v. Espirit De Corp., the Second Circuit

articulated a four part test applicable to an opponent of a motion for summary judgment who

seeks additional discovery.  769 F.2d 919, 926 (2d Cir. 1985).  The court stated that the opponent

needed to file an affidavit explaining (1) the nature of the uncompleted discovery, i.e., "what

facts are sought and how they are to be obtained;" (2) how those facts are reasonably expected to

create a genuine issue of material fact; (3) what efforts the affiant has made to obtain those facts;

and (4) why those efforts were unsuccessful.  Burlington, 769 F.2d at 926.

In Burlington, the party opposing summary judgment never filed such an affidavit,

instead mentioning Rule 56(f) for the first time only in its memorandum in opposition to

summary judgment.  Burlington, 769 F.2d at 926.  The court stated that "[a] memorandum is not

a substitute for an affidavit under Rule 56(f)" and that "the failure to file such an affidavit. . . is

by itself enough to reject a claim that the opportunity for discovery was inadequate."  Burlington,

769 F.2d at 926.  Therefore it is within this Court's discretion to deny Plaintiff's request.  See

FED. R. CIV. P. 56(F); Burlington, 769 F.2d at 926.

Even assuming, *arguendo*, that Plaintiff had submitted an affidavit pursuant to Rule 56,

he has nonetheless failed to allege "what facts are sought" or "how those facts are reasonably

expected to create a genuine issue of material fact."  Burlington, 769 F.2d at 926.  Plaintiff has

also failed to present specified reasons why he cannot "present facts essential to justify his

11

opposition," instead stating only that "[d]eposing Dr. Sandra Downey and Mr. Mark Hoekstra would provide more facts to [his] case."  FED. R. CIV. P. 56(f); Response at 9 (Dkt. No. 90).

Additionally, the Burlington court reasoned that a party who fails "to use the time available [for discovery] and takes no steps to seek more time until after a summary judgment motion has been filed need not be allowed more time for discovery absent a strong showing of need."  Burlington, 769 F.2d at 928.  The present litigation has been pending for over seven years.  During the discovery period, Plaintiff was represented by counsel and, although he may disagree now with his attorney's strategic decisions during the discovery process, this disagreement is not grounds for granting a Rule 56(f) request.  The Court also finds that there is no showing of need for additional discover.  Therefore, Plaintiff's request for additional discovery is denied.

## IV.    Conclusion

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendant's Motion for summary judgment (Dkt.  No.  73)  is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Request for additional discovery (Dkt.  No.  90) is **DENIED**; and it is further

**ORDERED,** that the Clerk serve a copy of this order on all parties.

**IT IS SO ORDERED.**

DATED:      June 26, 2008
            Albany, New York

Lawrence E. Kahn
U.S. District Judge